# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3864 | **DATE** | 2/13/2002 |
| **CASE TITLE** | ROBERT E. HILL vs. JACK E. POTTER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  Enter Memorandum Opinion And Order. Defendant's motions to dismiss and for summary judgment [33-1] [33-2] are granted.

(11)  ■  [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 14 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 40 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 FEB 13 PM 7: 12 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



# UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

|  |  |
|---|---|
| ROBERT E. HILL, | ) |
| Plaintiff, | ) Case No. 00 C 3864 |
| v. | ) The Honorable John W. Darrah |
| JACK E. POTTER, Postmaster General, | ) |
| United States Postal Service, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert E. Hill ("Hill"), filed a four-count amended complaint against

Defendant, Jack E. Potter[1] ("Potter"), Postmaster General of the United States Postal Service,

alleging race and gender discrimination and retaliation under Title VII of the Civil Rights Act of

1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) *et seq.*, and age discrimination under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633(a) (2001).

Potter moved for summary judgment pursuant to Federal Rule of Civil Procedure 56,

claiming that Hill cannot show that he was discriminated against because of his race, gender or

age or that he was retaliated for complaining about unlawful discrimination. Potter also moved

to dismiss.

For the reasons that follow, the Court grants Potter's motions for summary judgment and

---

[1]On June 4, 2001, Jack E. Potter succeeded William J. Henderson as Postmaster General. In accordance with Federal Rule of Civil Procedure 25(d)(1), Jack E. Potter is automatically substituted for William J. Henderson as the Defendant in this civil action.

-1-



to dismiss.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

# BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1"[2] and "Def.'s 56.1"[3]) and exhibits are as follows.

Jack E. Potter is the Postmaster General of the United States Postal Service ("the USPS") and is named as defendant in his official and representative capacity. (Def.'s 56.1 ¶ 1.) Robert E. Hill, a white male, was born in 1932 and has been employed by the USPS at all relevant times. (Def.'s 56.1 ¶ 2.)

The USPS divides executive workers into two tiers: the top tier, the Postal Career Executive Service ("PCES"), and Executive and Administrative Schedule ("EAS"). (Def.'s 56.1 ¶ 3.) Each tier contains several grades. (Def.'s 56.1 ¶ 3.)

Prior to the 1992 nation-wide restructuring, Hill held a top-tier position as General Manager, Real Estate Division (PCES-1) in Chicago. (Def.'s 56.1 ¶ 4.) During the restructuring, Hill's position was abolished, and he became an affected employee, requiring him to apply for newly created positions in the USPS. (Def.'s 56.1 ¶ 5.) In October 1993, Hill was placed temporarily as a "PCES on Special Assignment" but retained his grade and salary, a saved-grade PCES, and remained in Chicago. (Def.'s 56.1 ¶ 6.)

---

[2]Plaintiff did not file a Local Rule 56.1 statement of undisputed facts.

[3]The Court will not consider unsupported statements of fact or general "denials" that do not contain references to the factual record, as required by Local Rule 56.1(3). *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (strict compliance with the local rules governing summary judgment is upheld given the importance of local rules that structure the summary judgment process). It is deemed as admitted all 56.1 responses which fall into this category.

Plaintiff did not respond to paragraphs 33-38 of Defendant's Local Rule 56.1 Statement of Material Facts. Therefore, these paragraphs are deemed as admitted.

The Merit Systems Protection Board ("MSPB") determined that the reassignments during the 1992-1993 postal restructuring of postal employees with veteran's preference from higher-level to lower-level positions were procedurally defective reduction-in-force ("RIF") demotions. (Def.'s 56.1 ¶8.) The USPS was required to either implement remedial RIF procedures or completely restore the prior management structure. (Def.'s 56.1 ¶ 8.)

On July 8, 1995, pursuant to the remedial RIF procedure, Hill was placed into a second-tier EAS-25 level position, Manager, Real Estate. (Def.'s 56.1 ¶ 7.) He retained his previous PCES-level salary and remained in Chicago. (Def.'s 56.1 ¶ 7.)

As of January 8, 1994, Hill's annual salary was $87,276. (Def.'s 56.1 ¶ 18.) The maximum salary for an EAS-level 25 position was $74,702 in 1996 and did not surpass $83,821 at the end of 2000. (Def.'s 56.1 ¶ 18.) From 1996 until the present, the annual PCES Compensation Plans provided that "[e]xecutives whose current salaries exceed the maximum of the position to which they are assigned are not eligible for a basic salary increase." (Def.'s 56.1 ¶ 19.) In a letter dated March 14, 1996, Umscheid notified Hill that because Hill's salary surpassed the maximum salary permitted by the USPS for Hill's position, Umscheid could not grant Hill a raise. (Def.'s 56.1 ¶ 20.)

On December 18, 1995, Umscheid sent a memorandum to all Facilities managers instructing them to begin the Individual Performance Assessment Process with PCES executives in EAS positions. (Def.'s 56.1 ¶ 15.)

In a November 21, 1995 cover memorandum, then-Postmaster General, Marvin Runyon, informed all PCES employees that there would be Executive Performance Awards for 1995 in accordance with the terms of the award program. (Def.'s 56.1 ¶ 16.) Attached to this cover memorandum was another memorandum that stated that "[t]he 1995 awards range from 12 perent

of base salary for achieving all goals to zero for individual managers or performance cluster teams who failed to meet all goals." (Def.'s 56.1 ¶ 16.) Attachment A to the second memorandum, at section 6, stated: "Executives who do not fully contribute to the performance of the organization or whose performance does not otherwise meet expectations may be excluded from the awards program or have their award reduced." (Def.'s 56.1 ¶ 16.)

In a letter dated January 8, 1995, Umscheid informed Hill that Hill was being excluded from the 1995 performance award based upon his personal performance that year while on detail at the Chicago Facilities Service Office ("FSO"). (Def.'s 56.1 ¶ 17.)

Hill initiated three proceedings with the USPS's Equal Employment Office ("EEO"). He has also filed two judicial complaints in federal district court. All of these proceedings will be discussed below.

His first EEO action commenced on February 10, 1993, when Hill complained informally to the EEO that he was not selected for any newly created position due to race, color, sex and age discrimination. (Def.'s 56.1 ¶ 23.) Hill filed a formal complaint filed on May 11, 1993, alleging that he had not been selected for eighteen top-tier positions during the restructuring in favor of less qualified younger females and minorities. (Def.'s 56.1 ¶ 23.)

Hill then appealed his 1993 and July 1995 assignments to the MSPB. (Def.'s 56.1 ¶ 9.) On February 14, 1994, Hill notified the EEO that the EEO process should be terminated because he had filed an appeal with the MSPB. (Def.'s 56.1 ¶ 24.) On February 18, 1994, the EEO suspended its investigation pending action by the MSPB to determine the scope of the EEO 's jurisdiction. (Def.'s 56.1 ¶ 24.) His appeal of his 1993 assignment was dismissed for lack of jurisdiction. (Def.'s 56.1 ¶ 9.)

On June 14, 1995, Hill recommenced his EEO action, requesting a hearing before an administrative law judge ("ALJ"). (Def.'s 56.1 ¶ 25.) On October 2, 1995, the EEO sought additional information from Hill, but he declined to provide the requested information, stating that his request for a hearing had terminated the investigatory stage of the EEO process on his non-selection. (Def.'s 56.1 ¶ 25.)

On January 19, 1996, the ALJ remanded the cause to the EEO due to Hill's failure to provide the requested additional information. (Def.'s 56.1 ¶ 26.) Ten days later, the EEO renewed its request for additional information. (Def.'s 56.1 ¶ 26.) On April 3, 1996, Hill quit the administrative process on his non-selection claim and filed suit in United States District Court for the Northern District of Illinois. (Def.'s 56.1 ¶ 27.) On May 3, 1996, the EEO dismissed the non-selection complaint in light of Hill's suit. (Def.'s 56.1 ¶ 27.)

Brad Meador issued Hill a Letter of Warning dated November 19, 1996, that charged Hill with making unacceptable progress in completing expiring leases. (Def.'s 56.1 ¶ 21.) In his response dated November 23, 1996, Hill made it clear that he considered the Letter of Warning an act of retaliation. (Def.'s 56.1 ¶ 21.)

Hill had filed a prior complaint in the United States District Court for the Northern District of Illinois. By a memorandum opinion and order docketed on March 21, 1997, Judge Elaine Bucklo dismissed that complaint. (Def.'s 56.1 ¶ 22.) Judge Bucklo granted summary judgment to Defendant and dismissed with prejudice Hill's EEO claims that he was not placed in any PCES-level Facilities position during the 1992-1993 restructuring. (Def.'s 56.1 ¶ 22.) She also granted summary judgment and dismissed with prejudice his age claims that he was not selected for any EAS-level position within Facilities during that same time and event. (Def.'s 56.1 ¶ 22.) Due to his failure to exhaust

administrative remedies, she dismissed without prejudice, for want of subject matter jurisdiction, his remaining claims respecting his non-selection into EAS-level positions. (Def.'s 56.1 ¶ 22.) This decision is reported as *Hill v. Runyon*, 959 F. Supp. 480 (N.D. Ill. 1997).

On April 24, 1997, after Judge Bucklo's opinion and order, Hill reopened his formal EEO complaint on his non-selection claim. (Def.'s 56.1 ¶ 28.) In a final agency decision issued on July 14, 1997, the EEO dismissed Hill's complaint because (1) his failure to cooperate with and abandonment of the administrative process and his unexcused derelictions could not be cured by reopening his case, and (2) the subject matter of his complaint had been judicially and administratively dismissed. (Def.'s 56.1 ¶ 28.)

After his assignment to a second-tier position of Manager, Real Estate (EAS-25), on August 7, 1995, Hill commenced his second EEO action by contacting the EEO to complain that this assignment was a demotion based on age, race, and gender discrimination as well as retaliation for his prior EEO complaints. (Def.'s 56.1 ¶ 29.)

Hill initiated a new MSPB appeal based on this assignment. (Def.'s 56.1 ¶ 29.) On November 22, 1995, Hill withdrew his MSPB appeal. (Def.'s 56.1 ¶ 29.) The MSPB dismissed that appeal in a final order on December 27, 1995. (Def.'s 56.1 ¶¶ 13, 29.)

On March 27, 1996, Hill filed a formal complaint with the EEOC based on this assignment, alleging age and gender discrimination and retaliation. (Def.'s 56.1 ¶ 14.) The complaint alleged that: (1) following the remedial RIF procedure, Hill was not given a private office; (2) he was not given full contracting authority even though he had had such authority prior to the 1992 restructuring; (3) unlike younger employees, he had not received assignments commensurate with his background and experience; (4) he was subjected to higher scrutiny, as evidenced by two

satisfactory performance reviews, each with negative narrative, six months apart; (5) he was not being trained like the younger and/or female employees were; (6) he was denied a PCES performance award for Postal Fiscal Year 1995 upon the recommendation of Rudy Umscheid, Vice-President of Facilities; and (7) he was not given a raise in 1996. (Def.'s 56.1 ¶ 14.)

On or about October 10, 1997, Hill filed an action concerning these issues in the United States District Court for District of Columbia. (Def.'s 56.1 Ex. B.) In a final agency decision issued on March 17, 1998, the agency dismissed the demotion complaint due to the lawsuit in district court. (Def.'s 56.1 ¶ 29.)

On July 23, 1998, Judge Thomas Pennfield Jackson granted partial summary judgment and dismissed with prejudice Hill's claim that he was not placed into an EAS-level Facilities position during restructuring. (Def.'s 56.1 ¶ 30.) This decision is reported as *Hill v. Runyon*, 12 F. Supp. 2d 30 (D.D.C. 1998). Hill appealed, and the Court of Appeals for the District of Columbia Circuit dismissed the appeal for lack of final judgment as several claims remained at issue. (Def.'s 56.1 ¶ 31.) This decision is reported as *Hill v. Henderson*, 195 F.3d 671 (D.C. Cir. 1999). The cause was transferred to this Court and is the basis of this action. (Def.'s 56.1 ¶ 32.)

Hill's third EEO action stems from the USPS's decision to transfer him to a FSO in Greensboro, North Carolina. The events leading up to that decision were as follows.

In the beginning of 1999, based upon his assessment that the Chicago FSO was performing poorly and has a record of doing so, Umscheid directed Dennis Bryan, the PCES-level executive then managing that FSO, to a position that was the same level but outside Chicago and not in Facilities. (Def.'s 56.1 ¶ 33.) At the time, Bryan was fifty-three years of age, eleven years younger than Hill. (Def.'s 56.1 ¶ 33.) Umscheid regarded Bryan as being a poor manager of people but an outstanding

project manager. (Def.'s 56.1 ¶ 33.) At Bryan's request, Umscheid permitted Bryan to remain within Facilities in Chicago under an arrangement in which Bryan voluntarily accepted a demotion from PCES grade to an EAS-level position domiciled in Chicago in which he performed technical work for and under the direct supervision of the Washington, DC Major Facilities Office. (Def.'s 56.1 ¶ 33.)

John Logan replaced Dennis Bryan ("Bryan") as manager of the Chicago FSO in the spring of 1999. (Def.'s 56.1 ¶ 34.) Logan had worked in the office previously in 1997. (Def.'s 56.1 ¶ 34.) In 1997, Logan had observed that Hill, despite his high level of skill and experience, was performing his duties in a merely passable manner, not matching the contribution of his peers, and that he was not keeping established core office hours and too frequently could not be found at work by mid-afternoon. (Def.'s 56.1 ¶ 34.) Logan understood that Hill's poor performance had been the subject of written comment previously and that, although Hill was nominally the Real Estate Manager within the Chicago FSO, others had in fact been directing the real estate staff there. (Def.'s 56.1 ¶ 34.) Logan wanted to unify the title and duties of the position of Real Estate Manager in an effort to return the real estate function within the FSO to an acceptable level of performance. (Def.'s 56.1 ¶ 34.)

Logan determined that a significant aspect of bringing the entire Chicago FSO up to expectations was to correct the real estate function's underperformance. (Def.'s 56.1 ¶ 35.) Logan did not believe that Hill was the person to do that based on Logan's observation of Hill's work performance. (Def.'s 56.1 ¶ 35.) Moreover, Logan and Umscheid believed that Hill's minimally acceptable work performance over a period of years coupled with his higher rate of pay due to his status as a saved-grade PCES and his high level of skill and experience was negatively affecting

morale and the environment of the FSO real estate staff. (Def.'s 56.1 ¶ 35.)

Umscheid allowed Logan the option of moving one individual out of the Chicago FSO so that he would have the flexibility to select an outside subordinate manager to improve the real estate function. (Def.'s 56.1 ¶ 36.) Logan selected Art Strange to be the new real estate manager. (Def.'s 56.1 ¶ 36.) Hill was selected as the employee to be moved out of the Chicago FSO. (Def.'s 56.1 ¶ 36.) Logan transferred Hill to the Mid-Atlantic FSO located in Greensboro, NC. (Def.'s 56.1 ¶ 36.) Logan also decided to move Hill because he did not want the new real estate manager to be required to manage the former real estate manager. (Def.'s 56.1 ¶ 36.)

Umscheid felt that it was advantageous to send an experienced worker, such as Hill, to fill a vacant Real Estate Specialist position in a well-managed office where Hill would enjoy a fresh opportunity to perform at his level of capacity. (Def.'s 56.1 ¶ 36.)

Logan notified Hill of the transfer by a letter dated April 14, 1999. (Def.'s 56.1 ¶ 36.)

Hill ultimately pursued a formal administrative EEO complaint with respect to this transfer in which he claimed that he was the victim of age discrimination and retaliation. (Def.'s 56.1 ¶ 37.) In his EEO affidavit, Hill asserted the following facts in support of his claims of discrimination: (1) six Real Estate Specialists were not required to transfer away from Chicago, (2) Logan and Umscheid were aware of Hill's previous EEO activity, (3) Art Strange had once worked under Hill, (4) he had not been given any contracting authority, (5) he had not been permitted to have business cards, and (6) he had felt compelled to contact postal inspectors concerning what he viewed as improper work assignments. (Def.'s 56.1 ¶ 37.)

Hill's third EEO action is the basis of the transfer issue raised in his amended complaint. (Def.'s 56.1 ¶ 38.)

# DISCUSSION

Defendant Potter has moved for summary judgment on Plaintiff Hill's claim that Potter violated Title VII and the ADEA by discriminating against Hill based on his age, race, sex, and retaliating against Hill for pursuing EEO claims. Potter argues that summary judgment is proper because: (1) Hill failed to exhaust administrative remedies with respect to the claims that were raised in his MSPB appeal; (2) Hill cannot establish a *prima facie* case of discrimination or retaliation; and (3) even if Hill could establish a *prima facie* case of retaliation, Hill cannot show that his treatment was pretextual.

Potter also moves to dismiss certain of Hill's claims arguing, that they are barred under the doctrine of res judicata, fail to state a claim upon which relief may be granted or are not cognizable under the Civil Rights Act of 1991.

Hill claims that the USPS discriminated against him by not selecting him for certain high-level positions during the 1992-1993 restructuring due to his age, race and gender and by transferring him in 1999. Hill also claims that he was subject to a course of adverse treatment, including denial of salary increases and bonuses, negative performance evaluations, denial of training and transfer in 1999, in retaliation for complaining about unlawful discrimination.

As discussed later in this opinion, Hill's claims that he was not selected for certain high-level positions during the 1992-1993 restructuring are barred by the doctrine of res judicata.

## Failure to Exhaust Administrative Remedies

Potter argues that Hill's claims that he (1) was not given a private office, (2) had to report to and work for a former subordinate, (3) was not given full contracting authority, and (4) was assigned work that was not commensurate with his background and experience are barred because

Hill has not exhausted his administrative remedies.

Federal employees asserting Title VII claims must exhaust their administrative remedies before filing suit in federal district court. *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir. 1995) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832 (1976)). The employee must first seek relief from the EEO department of the employing agency under the procedures of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c). *McAdams*, 64 F.3d at 1141 (citing *Brown*, 425 U.S. at 832).

"In some cases, federal employees affected by particular adverse employment actions may instead assert their related [discrimination] claims in connection with an appeal to the MSPB." *McAdams*, 64 F.3d at 1141 (citing 5 U.S.C. § 7701). These are "mixed cases"-- that is, complaints of employment discrimination filed with a federal agency based on race, sex, color, religion, national origin, age or handicap related to an action that can be appealed to the MSPB. 29 C.F.R. § 1614.302(a)(1). The Civil Service Reform Act ("CSRA") provides the procedures that are preconditions to filing suit in federal district court in mixed cases. 5 U.S.C. § 7702

The CSRA provides that "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review of the order or decision." 5 U.S.C. § 7703(a)(1). MSPB final decisions or orders must be appealed to the Court of Appeals for the Federal Circuit, § 7703(b)(1), unless it is a case of discrimination subject to § 7702; in which case, it must be filed in a federal district court. 5 U.S.C. § 7703(b)(2).

If employees have not appealed their mixed cases to the MSPB, employees may file a discrimination action based on the complaint in federal district court within thirty days of a final decision by the employing agency or after 120 days have passed without a decision. 5 U.S.C. § 7702(e)(1)(A). If employees have appealed their mixed cases to the MSPB, they may file a

discrimination action in federal district court within thirty days of the MSPB's final decision, if they have not petitioned the EEOC to review the decision or after 120 days have passed without a final decision. 5 U.S.C. §§ 7702(e)(1)(B), 7703(2). However, once employees have chosen to appeal the mixed case to a particular agency (such as the EEOC or the MSPB), they must exhaust their claims in that forum before they are able to file suit in federal district court. *See, e.g., McAdams*, 64 F.3d at 1142; *Chaney v. Rubin*, 986 F. Supp. 516, 520 (N.D. Ill. 1997)

An appeal to a federal district court from an MSPB decision in a mixed case must be a "judicially reviewable action" in order for a federal district court to exercise *de novo* review of the discrimination claim. 5 U.S.C. § 7702(a)(3).

The instant case is a mixed case. Hill filed a complaint with the USPS about age, gender and reprisal discrimination that was related to an adverse employment action that was appealable to the MSPB. Therefore, § 7702 determines which procedures were preconditions to Hill's suit in federal court.

Hill filed complaints with the EEO about his 1993 and July 1995 assignments. Hill then appealed these assignments to the MSPB, which dismissed the appeal of the 1993 assignment for lack of jurisdiction. When Hill reopened his EEO action regarding his July 1995 assignment, he made the following claims: (1) he had only the equivalent title of his pre-1992 restructuring position, (2) he was not given responsibilities commensurate with his former position, (3) he performed duties assigned to him by a former subordinate, (4) under 5 U.S.C. § 2302(b)(1), (9), his placement was a prohibited personnel practice, (5) he was not given a private office, (6) he had different duties than his predecessor, and (7) he had not received full contracting authority.

On November 22, 1995, Hill withdrew the appeal of the July 1995 assignment, and it was

dismissed by the MSPB. This dismissal became a final order on December 27, 1995.

The Court lacks subject matter jurisdiction over these claims because Hill has not exhausted his administrative remedies. Once Hill selected the MSPB as the forum for those seven claims, Hill was required to exhaust his administrative remedies before the MSPB. Hill has not done so. He voluntarily withdrew his appeal of the July 1995 assignment. Hill must appeal these claims to the MSPB before he can file suit in federal district court on those claims.

Furthermore, there is no "judicially reviewable action" by the MSPB in this case, as required by § 7702(a)(3). While a final order was issued on December 27, 1995, that order was issued only because Hill voluntarily withdrew his appeal. The MSPB never had a chance to consider the merits of Hill's claims. Moreover, permitting Hill to maintain these claims in the present action would render the requirements for a "judicially reviewable action" and exhaustion of remedies meaningless. Hill made a token attempt to exhaust his remedies by appealing to the MSPB. That token effort should not be rewarded.

Therefore, Hill's claims that (1) he had only the equivalent title of his pre-1992 restructuring position, (2) he was not given responsibilities commensurate with his former position, (3) he performed duties assigned to him by a former subordinate, (4) under 5 U.S.C. § 2302(b)(1), (9), his placement was a prohibited personnel practice, (5) he was not given a private office, (6) he had different duties than his predecessor, and (7) he had not received full contracting authority are dismissed due to failure to exhaust his administrative remedies and lack of a judicially reviewable action.

*Discrimination and Retaliation*

Potter argues that summary judgment on Hill's race, gender and age discrimination claims

is appropriate because Hill cannot show that he suffered an adverse employment action or that USPS's explanations for its treatment of Hill are pretexts for unlawful discrimination.

Hill may prove discrimination under Title VII or the ADEA through direct evidence or indirectly through the burden-shifting mechanism of *McDonnell Douglas*.[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In this case, Hill has presented no direct evidence of discrimination. Direct evidence of intentional discrimination entails proof of acknowledgment by the Defendants of a discriminatory motive. *Troupe v. May Department Store*, 20 F.3d 821, 823 (7th Cir. 1994).

Hill has attempted to prove discrimination indirectly by arguing that he was treated differently from other non-white, younger, and/or female employees because of his race, age and gender. To prove discrimination indirectly, Hill must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate performance expectations; and (4) his employer treated similarly situated employees who were not in the protected class more favorably. *Maarouf v. Walker Manufacturing Co.,* 210 F.3d 750, 751 (7th Cir. 2000). Hill cannot establish the third or fourth elements.

A retaliation claim may be proved by indirect evidence under the burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kersting*, 250 F.3d at 1117. In order to prove a claim of retaliation under Title VII, Hill must prove that: (1) he engaged in statutorily

---

[4]     Under the *McDonnell Douglas* framework, a *prima facie* case of employment discrimination creates a rebuttable presumption that employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions; if the employer satisfies that burden, Plaintiff must then show that articulated reasons were pretextual. *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1261 (7th Cir. 1994).

protected expression, (2) he suffered an adverse employment action, and (3) there is a causal link between the protected expression and the adverse employment action. *Stutler v. Ill. Dep't of Corrections*, 263, F.3d 698, 702 (7th Cir. 2001) (citations omitted); *see also Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (holding that "the employer's adverse action [must] follow[] fairly soon" after the employee's protected expression to establish the required nexus for retaliation in violation of Title VII). Hill cannot establish the third element.

Because the analysis of adverse employment actions is the same for the discrimination and retaliation claims, they will be discussed together later in this opinion.

Hill cannot establish that he was meeting the USPS's legitimate expectations. Hill does not dispute that John Logan, during the time he worked with Hill at the Chicago FSO in 1997, observed that Hill was only performing in a passable manner and was not matching the contribution of his peers or keeping established core office hours. Furthermore, Logan observed that Hill frequently could not be found in the office by mid-afternoon. "[S]o long as the employer's employment expectations are 'in good faith[,] without fraud or deceit,'. . . [a court] only determine[s] if the employee met them." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000) (internal citation omitted). Hill has not presented any evidence that the USPS's expectation that he maintain established office hours, remain in the office for the full workday, or match the contribution of his peers was unreasonable and not in good faith.

Moreover, Hill has only presented a single, unauthenticated document that is purported to reflect his high productivity, a report called Real Estate Productivity for the Third Quarter of Fiscal Year 1999. Potter has presented several, authenticated documents that show that Hill's productivity in the real estate department was lower than his peers, the November 19, 1996 Letter of Warning,

the EEO Investigative Affidavit of John Logan dated February 2, 2000 (Def.'s 56.1 Ex. E), and reports detailing the productivity of employees in Real Estate at the Chicago FSO. (Reply Attachment 5 at Ex. 4.) Therefore, there is no issue of material fact as to whether Hill was meeting the USPS's legitimate expectations.

Hill also cannot establish that the USPS treated similarly situated employees who were not in the protected class more favorably. *Maarouf*, 210 F.3d at 751. Hill claims that since May 11, 1993, younger employees and/or employees of color have received assignments commensurate with his experience and background. However, Hill has not presented any evidence that similarly situated employees outside the protected class were treated more favorably by the USPS. He has not identified any similarly situated younger employees or employees of color who received the positions that were commensurate with his experience and background. He has not identified such positions that were denied him but given to such similarly situated employees. Therefore, there is no issue of material fact as to whether similarly situated employees who were not in the protected class were treated more favorably by the USPS.

Turning to the issue of adverse employment actions, there must be a "suspiciously short period of time between the employee's complaint and the adverse employment action." *Parkins v. Civil Constructors*, 163 F.3d 1027, 1039 (7th Cir. 1998). In *Sweeney*, the Seventh Circuit reasoned that one day or one week might be sufficient to establish a causal link. 149 F.3d at 557. "A substantial time lapse between the protected activity and the adverse employment action 'is counter-evidence of any causal connection.'" *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (quoting *Johnson v. Univ. of Wis.-Eau-Claire*, 70 F.3d 469, 480 (7th Cir. 1995)).

Hill argues that he suffered the following adverse employment actions: he was (1) denied a

pay raise in 1996, (2) subjected to heightened scrutiny, (3) given negative performance evaluations, (4) denied a performance award, (5) denied training that was given to minority and female employees, (6) issued a Letter of Warning, and (7) transferred from Chicago, Illinois to Greensboro, North Carolina.

Negative performance evaluations are "not . . . adverse employment action[s] unless . . . [they are] accompanied by some other action, such as job loss or demotion." *Krause v. City of La Crosse*, 246 F.3d 995, 999 (7th Cir. 2001). First, it should be noted that Hill's performance reviews were not negative. Hill received a satisfactory rating, but the narrative portion of the evaluation contained negative commentary. At any rate, Hill's "negative" performance evaluations were not accompanied by any other action. Hill is currently employed by the USPS at its Greensboro, North Carolina FSO. Furthermore, any demotion Hill may have suffered was due to the 1992 restructuring and the remedial RIF ordered by the MSPB. Moreover, Hill's transfer to the Greensboro, North Carolina FSO did not take place until 1999, four years after the allegedly negative performance evaluation. Therefore, the negative employment evaluations do not constitute an adverse employment action.

Furthermore, Hill's claim that he was denied training that was given to minority and female employees does not show that he suffered an adverse employment action. Hill must show that the training that was made available to him was less than the training that was made available to female and minority employees and that the lack of training constituted an adverse employment action. *Maarouf*, 210 F.3d at 753. However, Hill has not presented any evidence that USPS made training available to female and minority employees that it did not make available to him or that his request for training was denied but similar requests by female and minority employees were granted.

The Letter of Warning also does not constitute an adverse employment action. A Letter of

Warning, unaccompanied by a tangible job consequence, such as a change in title or salary or responsibilities, does not constitute an adverse employment action. *Kersting v. Wal-Mart Stores*, 250 F.3d 1109, 1118 (7th Cir. 2001). Here, the Letter of Warning was not accompanied by any tangible job consequence. Hill retained the same position and the same salary despite the Letter of Warning. Moreover, Hill received the Letter of Warning in November 1996. Hill was not transferred to Greensboro, North Carolina until 1999, three years after the Letter of Warning. Therefore, the Letter of Warning is not an adverse employment action.

The denial of a performance award in 1996 does not constitute an adverse employment action. "[L]oss of a bonus is not an adverse employment action . . . where the employee is not automatically entitled to the bonus." *Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996). In this case, the performance award is analogous to the bonus in *Rabinovitz* because the performance award was discretionary. The award program provided that executives (1) who did not fully contribute to the performance of the organization or (2) whose performance did not otherwise meet expectations would have their awards reduced or would not receive an award at all. As discussed later in this opinion, Hill's performance was not meeting the USPS's expectations, and the USPS exercised its discretion not to give him an award.

In the instant case, there is a substantial time lapse between Hill's complaints and his adverse employment actions; and, therefore, Hill cannot show that there is a causal link between his protected expression and the adverse employment actions. Hill first began his proceeding with the EEO in 1993, appealed to the MSPB in 1994 and 1995, filed a formal complaint with the EEOC in 1996, and filed suit in federal district court against then-Postmaster General, Marvin Runyon, in 1996. During this time period, Hill closed and reopened his case with the EEO several times.

However, he was not transferred to Greensboro until April 14, 1999, six years after he started his first EEO office proceeding, five years after he first appealed to the MSPB, and three years after he filed a formal complaint with the EEOC and suit in federal court. Moreover, he appealed the dismissal of his EAS-related claims on August 24, 1998. His transfer to Greensboro was eight months later. These times are too distant to establish a causal nexus between his complaint and the transfer. *See, e.g., Parkins*, 163 F.3d at 1039 (holding one-month gap between complaint and lay off insufficient to establish causal connection); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (holding four-month gap between complaint and disciplinary letter was insufficient to establish a causal connection).

Moreover, the denial of the pay raise occurred on March 14, 1996, nine months after he recommenced his EEO action. These events are too remote to establish a causal nexus between his protected activity and the denial of a pay raise. Therefore, Hill cannot establish the elements of a retaliation claim.

Even assuming Hill could establish a *prima facie* case of discrimination or retaliation, he has failed to show that the USPS's legitimate articulated reasons for denying him a raise in 1996 and a performance award, subjecting him to two performance evaluations in six months, and transferring him to Greensboro, North Carolina were pretextual. "A plaintiff can establish pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). An honest belief in the non-discriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or baseless. *Debs*, 153 F.3d at 396.

The USPS presents the following reason for denying Hill a pay raise in 1996: Hill's salary

exceeded the maximum salary permitted by the USPS for his position. In 1996, the annual PCES Compensation Plans provided that executives whose present salaries exceeded the maximum salary of their assigned position were not eligible for a raise. Hill does not dispute that provision noted above was a part of the PCES Compensation Plan. Hill also does not dispute that in 1994 his annual salary was $87,276 or that, in 1996, the maximum salary for his EAS-level 25 position was $74,702. Thus, Hill has offered no evidence from which a rational jury could conclude that the USPS did not honestly believe its proffered reason for denying him a pay raise in 1996.

The USPS presents the following reason for denying Hill a performance award in 1996: his poor performance while on a detail at the Chicago FSO did not merit an award. Hill does not dispute that the performance award program provided that executives whose performance was poor would not receive a performance award. Hill does not dispute that his performance was poor. Rather, Hill argues that his performance was poor because the USPS denied him what he needed to do his job in a satisfactory manner. However, Hill has not presented any evidence that establishes that this was in fact the case. Neither does Hill present any evidence from which a rational jury could find that the USPS did not honestly believe its proffered reason for denying him a performance award.

The USPS presents the following reason for subjecting Hill to two performance reviews in six months: based on an order by the Facilities Vice-President, all Facilities managers and PCES executives in EAS positions were subject to the second performance review. Hill does not dispute that the Facilities Vice-President ordered a performance review or that the Facilities managers and PCES executives were to be reviewed. Moreover, Hill has not presented any evidence that other similarly situated younger and/or female employees were not subjected to a performance review at that time. Therefore, Hill has not presented any evidence from which a rational jury could find that

-21-

the USPS did not honestly believe its proffered reason for reviewing him twice in six months.

The USPS presents two reasons why Hill was transferred to Greensboro, North Carolina: Logan and Umscheid, the Vice-President of Facilities, believed that Hill's poor performance and high pay grade were bringing down morale in the Chicago FSO and that Hill's talents would be best suited to the well-run Greensboro FSO, where Hill could prove himself. Hill has not presented any evidence that other low-performing PCES executives in EAS-level 25 positions outside the protected group were not transferred. Furthermore, as was discussed earlier, Hill readily admits that his work performance was poor.

Moreover, the USPS has presented evidence that a fifty-three year-old PCES executive at the Chicago FSO, Dennis Bryan, who was not performing optimally was scheduled to be transferred out of Chicago but was permitted to stay in Chicago, at his request, when he voluntarily accepted a demotion to an EAS-level position domiciled in Chicago. Hill has not presented any evidence that he requested, and was denied, an opportunity to remain in Chicago on the same terms as Bryan. Thus, Hill has not presented any evidence from which a rational jury could find that the USPS did not honestly believe its proffered reason for transferring him to Greensboro, North Carolina.

Therefore, summary judgment on Hill's age, race, and gender discrimination and his retaliation claims is appropriate.

### Res Judicata

The USPS argues that Hill's claims that he was discriminatorily denied placement into PCES-level and EAS-level positions during the 1992-1993 postal restructuring, Counts I through IV, are barred by the doctrine of res judicata because this claim has already been litigated to a final judgment on the merits.

"[R]es judicata is an affirmative defense designed to prevent the 'relitigation of claims that were or could have been asserted in an earlier proceeding.'" *Rizzo v. Sheahan*, 266 F.3d 705, 714 (7th Cir. 2001) (quoting *D&K Props. Crystal Lake v. Mutual Life Ins. Co. of N.Y.*, 112 F.3d 257, 259 (7th Cir. 1997)).

Count I in its entirety and certain aspects of the claims stated in Counts II, III, and IV were the subject of prior litigation. *See Hill v. Runyon*, 959 F. Supp. 488 (N.D. Ill. 1997). In that case, the court held that Hill's claim that he was not selected for a PCES position was barred by the statute of limitations and that the court lacked subject matter jurisdiction over his Title VII claim that he was not selected for EAS positions because Hill had not exhausted his administrative remedies with respect to those positions and granted summary judgment on his ADEA claim that he was not selected for EAS positions. *Hill*, 959 F. Supp. at 493, 496. Thus, these claims have been litigated to a final judgment and are barred by the doctrine of res judicata.

## CONCLUSION

For the reasons stated herein, Defendant's Motions to Dismiss and for Summary Judgment [33-1, 33-2] are granted.

**IT IS SO ORDERED.**

John W. Darrah, Judge

United States District Court

Date: February 13, 2003